IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DANNY LEE ROGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 02-C-2584-W |
| | ) |
| DAVID ABSTON, Sheriff, et.al., | ) |
| | ) |
| Defendants. | ) |

ENTERED

SEP 1 6 2003

### MEMORANDUM OF OPINION

Danny Lee Rogers, hereinafter referred to as plaintiff, has filed a *pro se* complaint pursuant to 42 U.S.C. §1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged while he was an inmate at Pickens County Jail in Carrollton, Alabama.[1] Plaintiff names as defendants Sheriff David Abston, Supervisor Peggy Easter, and Officers Thomas Wilkins and Leroy Bryant. He seeks monetary and injunctive relief.[2]

Under the Prison Litigation Reform Act of 1996, Pub. L. No. 104-134, §804, 110 Stat. 1321, and 28 U.S.C. §1915A, this court is required to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint that it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks

---

[1] (Document #5, at 5). To assist in reviewing plaintiff's claims, the court will use the handwritten page numbers located in the lower right hand corner of document 5 for reference purposes.

[2] Plaintiff is now incarcerated in the United States Penitentiary in Atlanta, Georgia. Therefore, his request for injunctive relief has been rendered moot by his release from the custody of the Pickens County Jail. "Absent class certification, an inmate's claim for injunctive and declaratory relief in a §1983 action fails to present a case or controversy once the inmate has been transferred" or released. *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985). "'Past exposure to [alleged] illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury.'" *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (quoting *Dudley v. Stewart*, 724 F.2d 1493, 1494 (11th Cir. 1984)).

monetary relief from a defendant who is immune from such relief. While the former 28 U.S.C. §1915(d) permitted the court to dismiss claims *sua sponte* only if the court found them frivolous or malicious, the new Section 1915A directs the court, in effect, to make and rule on its own motion to dismiss the complaint prior to service. In order to protect a *pro se* prisoner's right of access to the courts, however, these complaints are read by less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

## FACTUAL ALLEGATIONS

Sheriff David Abston

Plaintiff was an inmate at Pickens County Jail from approximately September 27, 2002 (Document #5, at 5), to December 18, 2002. (Document #11). In his amended complaint, plaintiff contends that defendant Abston subjected him to cruel and unusual punishment and denied him access to court. (Document #5, at 7). As his factual basis therefore, plaintiff complains that the "Pickens County Jail does not employ a full time medical staff and/or any person(s) trained and/or licensed in medicine. . . . [O]n several [occasions, plaintiff has] been denied his medications or . . . medical attention altogether, waiting a week or longer to see the doctor who (sic), is only scheduled to come into the jail once a week." *Id.* at 5.

Plaintiff also contends that he has "documented medical problems with [his] back, shoulders and neck . . .", because

> [I am] forced to sit on a cold concrete floor or cold steel benches from 6:30 am to 6:30 pm seven days a week . . . . There is no sitting on our beds at these times whatsover . . . . [T]o add insult to injury, at night time when we finally can lay in our beds to go to sleep[,] [Pickens County Jail employees] turn the light[s] on their

> brightest settings[. . . . T]hese lights are directly over our beds. . . . When we filed grievances to Sheriff Abston about these issues, he did in fact visit the jail and state[d] that inmates will not sleep all day in his jail and stay up all night. This [is] creating high levels of undue stress and anxiety. . . .[T]here [are] no televisions, [radios,] newspapers or magazines allowed . . . [so there is] nothing to stimulate ones mind or create avenues to keep intact with reality and/or to keep in touch with the 'free world.'

*Id.* at 5-7.

Inmates are fed by "untrained, unsupervised inmates" since Abston "failed to employ or staff . . . a dietary manager or food service worker . . .trained in food service management and/or food [preparation,]. . . storage or nutrition here at Pickens Co. Jail." *Id.* at 6. This failure causes plaintiff to often feel "malnutritioned (sic) and hungry" because inmates only receive two meals on Sunday, as opposed to three meals per day on all other days of the week. *Id.* Moreover, the jail does not serve any type of juices or milk for any meal. *Id.* Instead, inmates are served ice water and cool-aid. Plaintiff describes typical meals as bologna sandwiches for lunch and rice and beans for supper. *Id.* He also asserts that "meals are generally [served] cold as opposed to proper 160° . . . temperatures." *Id.*

Finally, plaintiff complains that Abston "failed to have a working and/or furnished law library or any source to obtain legal material, violating [my right] to access the court or the ability to properly research [my] case to examine and/or entertain legal remedies pertaining to [my] criminal or civil case." *Id.* at 5.

<u>Peggy Easter</u>

Plaintiff contends that defendant Easter "conspired to" (1) deprive him of proper medical attention, (2) inflict him with cruel and unusual punishment and involuntary servitude, (3) deny him reasonable access to courts, and (4) deny him an adequate diet. *Id.* at 8-9.

The underlying factual allegations in support of these claims mirror those made against defendant Abston, with one addition. Plaintiff contends defendant Easter, as "supervisor of the Pickens Co. Jail[,] . . . conspire[d] to deprive plaintiff of proper medical attention . . .", because Easter knew the medical department was inadequate and insufficient. *Id.* at 7. Plaintiff explains that he was forced to go without his medications for a week or longer on several occasions. *Id.* Said medications are psychotropic, and plaintiff suffers severe mental anguish when he is not able to receive them. *Id.* At the time of the filing of the amended complaint, plaintiff had been without this medication for approximately two (2) weeks. *Id.* Plaintiff "filed grievance and/or request forms [about his medication,]" but was told that he would have to wait until the doctor came to the jail. *Id.*

<u>Thomas Wilkins</u>

Plaintiff contends that defendant Wilkins "conspired to inflict cruel and unusual punishment and [involuntary] servitude [by] forcing plaintiff to sit on [a] cold concrete floor or cold steel benches from 6:30 am to 6:30 pm seven days a week [by] threatening extreme [measures of] force if we did not comply. . . ." *Id.* at 10. Defendant Wilkins also subjected plaintiff to "cruel and unusual punishment and involuntary servitude" on two other occasions as set out below. *Id.*

On "Friday, September 27th, 2002," defendant Wilkins entered plaintiff's housing unit, and "ordered [approximately 20 inmates] to face the wall and get down on our knees. . ." *Id.* at 9. Wilkins then walked around the housing unit, pointing a "stun gun with a laser sight 'turned on'" at the back of approximately twenty inmates' heads "as if he was fantasizing [about] shooting us execution style." *Id.* Wilkins warned the inmates that he would use the stun gun if anyone "said a word." *Id.* Wilkins justified his behavior by informing the inmates that toilet paper needed to be removed from the air vents. *Id.*

4

On October 5, 2002, plaintiff asserts that Wilkins went on another "rampage," when he again entered plaintiff's housing unit, and ordered "everybody to get against the wall [while] threatening again to shoot us with his stun gun." *Id*. This time plaintiff asked Wilkins what enjoyment Wilkins got out of treating inmates in such a manner. *Id*. In response, Wilkins ordered plaintiff to turn his back toward Wilkins, whereby plaintiff was handcuffed and escorted to a "confinement cell with no blanket, mattress or pillow for 5 days. . . ." *Id*. Plaintiff did receive these items after the 5th day, but was still forced to remain in confinement for an additional five days. *Id*.

Leroy Bryant

Plaintiff contends that deputy Bryant "deprived and/or conspired to inflict cruel and unusual punishment and involuntary [servitude] by forcing plaintiff [to] sit on [a] cold concrete floor or cold steel benches from 6:30 am to 6:30 pm seven days a week with constant threats of excessive force to be used for failure to comply. *Id*. at 10.

Grievance Procedure

Plaintiff attests that Pickens County Jail has a grievance procedure. In his amended complaint, plaintiff declares that he presented the facts relating to his complaint in the grievance procedure. *Id*. at 2. He also appealed his grievances "through the chain of [command] all the way up to the Sheriff of [Pickens County,]" but only received a "negative response" from the sheriff, who "stated that the rules that are in place are not going to change." *Id*.

## DISCUSSION

### I. Cruel and Unusual Punishment

#### A. Conditions of confinement

Conditions of confinement claims by convicted prisoners are governed by the Eighth Amendment proscription against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d (1979). In order to establish an Eighth Amendment violation, a plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), (2) the defendant[s'] 'deliberate indifference' to that condition, *Wilson v. Seiter*, [502] U.S. [294, 303], 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), and (3) causation, *Williams v. Bennett*, 689 F.2d 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (footnotes omitted), *cert. denied*, 510 U.S. 1164 (1994). Whether a particular condition of confinement constituted cruel and unusual punishment is an objective inquiry; whether prison officials were deliberately indifferent to that condition is a subjective inquiry. *See Wilson v. Seiter*, 502 U.S. at 290.

Prison conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. at 347. While it is the duty of prison officials to furnish prisoners with "reasonably adequate" food, clothing, shelter, and sanitation, *Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977), *rev'd in part on other grounds*, 438 U.S. 781 (1978), the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. at 349. As the Eleventh Circuit Court of Appeals observed in *Newman*: "[T]he Constitution does not require that prisoners be provided any and every amenity

6

which some person may think is needed to avoid mental, physical, and emotional deterioration." 559 F.2d at 291.

> [C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

*Rhodes v. Chapman*, 452 U.S. at 347.

"To be deliberately indifferent, a prison official must knowingly or recklessly disregard an inmate's basic needs." *LaMarca v. Turner*, 995 F.2d at 1535. In order to establish that an official was deliberately indifferent, "a plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Id.* at 1535 (*quoting Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985), *cert. denied*, 479 U.S. 816 (1986)). *Accord Farmer v. Brennan*, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994).

1. *Shelter, Exercise and Sleep*

For approximately 2 ½ months, plaintiff was forced under threat of physical harm to sit on a cold floor or bench 12 hours per day, 7 days per week. There were no televisions, radios, newspapers or magazines allowed in the jail to occupy or stimulate the mind of plaintiff. At night, the lights were turned on their brightest setting, and since they were positioned directly over plaintiff's bed, sleep deprivation was a constant factor. Plaintiff contends that defendants were aware of such conditions and plaintiff's physical and mental infirmities, but refused to change the circumstances under which he was being held. The aforementioned factors sufficiently state Eighth Amendment claims against defendants Abston, Easter, Wilkins and Bryant. As such, same are due to be addressed in further proceedings consistent with this opinion.

2. *Segregation confinement*

Prison officials may subject an inmate to certain restrictions in a detention facility "so long as those conditions and restrictions do not amount to punishment or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. at 536-37. Conditions and restrictions imposed upon inmates that are "reasonably related to a legitimate governmental interest, [do] not, without more, amount to 'punishment.'" *Id.* at 539. Maintaining security and order in the detention facility is clearly a legitimate governmental interest . . . . [and] [r]estraints that are reasonably related to the institution's interest in maintaining . . . security do not, without more, constitute unconstitutional punishment, even if they are discomforting . . . ." *Id.* at 540.

Plaintiff is affronted that he was placed in a segregation cell for 10 days, 5 of which he spent without a blanket, mattress or pillow. This court must decide whether the lack of a mattress, blanket or pillow is an objective deprivation as envisioned by Eighth Amendment jurisprudence. Inherent in that consideration is the amount of time plaintiff spent without these items. Conditions which might be tolerable for a few days" might easily be "intolerably cruel for weeks or months." *Hutto v. Finley*, 437 U.S. 678, 687, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978).

Plaintiff was placed in segregated confinement for comments he made to defendant Wilkins while Wilkins was attempting to restore order and security in the cell area. Only a few days earlier, Wilkins had to secure the same area because paper had been placed in the ventilation ducts, an obvious fire hazard. Plaintiff does not allege that the conditions in his segregation cell were filthy, or that he was denied sanitation, clothing, food or water while in segregation. He does not state that he was forced to sit on a bench or the floor by threat of force for extended periods of time, nor does he express that the lights in segregation prevented him from sleeping. He does not assert that there

was no furniture in the cell upon which he could rest, that the cell lacked ventilation, or remained inordinately hot or cold. Therefore, the court does not find that the limited amount of time plaintiff spent in segregation without a mattress, pillow or blanket constitutes an objectively serious deprivation such that the Eighth Amendment has been implicated. Therefore, this claim is due to be dismissed for failure to state a claim upon which relief may be granted.

3. *Food*

It is well-established that inmates must be provided nutritionally adequate food, "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Bolding v. Holshouser*, 575 F.2d 461 (4th Cir.1978), *cert. denied*, 439 U.S. 837, 99 S.Ct. 121, 58 L.Ed.2d 133 (1978). However, the Constitution requires only that prisoners be provided "reasonably adequate food" which contains "sufficient nutritional value to preserve health." *Id.; Jones v. Diamond*, 636 F.2d 1364, 1378 (5th Cir.)(en banc), *cert. granted*, 452 U.S. 959, *cert. dismissed*, 453 U.S. 950 (1981); *Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977), *rev'd in part on other grounds sub nom Alabama v. Pugh*, 438 U.S. 781 (1978); *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977). There is no requirement that the food be premium quality, or even attractive.

Although plaintiff felt malnourished and hungry, he does not maintain that he lost weight, became weak or requested medical attention. He also admits that inmates were served 3 meals per day, except Sunday, when they were served 2 meals per day. While plaintiff complains that the food was 'generally' cold, and that there was no dietician to manage the menu and food distribution, he does not claim that he ever sought medical attention because of the food he ate. Nor does he allege

that there was ever an outbreak of food poisoning, diarrhea, or other health problems that would be indicative of unhealthy conditions in the preparation or handling of food. As such, the factual allegations underlying plaintiff's Eighth Amendment claims against defendants Abston and Easter regarding the meals served at Pickens County Jail are simply insufficient to state a claim under §1983 and are due to be dismissed.

### B. **Inadequate Medical Care**

In *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S.Ct 285, 291-92, 50 L.Ed.2d 251 (1976), "the Supreme Court held that deliberate indifference to serious medical needs is proscribed by the Eighth Amendment's prohibition against cruel and unusual punishment." *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994). A two-part analysis is employed in determining whether an Eighth Amendment violation has occurred. "First, we must evaluate whether there was evidence of a serious medical need; if so, we must then consider whether [the defendant's] response to that need amounted to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). The first inquiry is objective; the second inquiry is subjective. *See Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1186 (11th Cir. 1994).

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S.1, 9, 112 S.Ct. 995, 1000 (1992). "[T]he medical need of the prisoner need not be life threatening" to be considered "serious." *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988). A "'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. DeKalb Regional Youth Detention Center*,

40 F.3d at 1187 (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)). As noted above, this is an objective determination.

The second part of the inquiry -- whether the response of the defendants amounted to deliberate indifference -- is itself a two-part determination. A defendant may be held liable for an Eighth Amendment violation only if he had "knowledge of the [plaintiff's] particular medical condition," *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1191 (emphasis omitted), *and* he acted intentionally or recklessly to deny or to delay "access to medical care" or to interfere "with the treatment once prescribed," *Estelle v. Gamble*, 429 U.S. at 104-05. *See also Mandel v. Doe*, 888 F.2d at 788. *See generally Farmer v. Brennan*, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1977-81 (1994). "'It is obduracy and wantonness, not inadvertence or error in good faith,' that violates the Eighth Amendment in 'supplying medical needs.'" *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) (*quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

Further, it is clear that "[s]ome delay in rendering medical treatment may be tolerable depending on the nature of the medical need and the reason for the delay." *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995). It is only when "delay in access to medical care . . . is 'tantamount to "unnecessary and wanton infliction of pain,"' [that it] may constitute deliberate indifference to a prisoner's serious medical needs." *Id.* (*quoting Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.), *cert. denied*, 496 U.S. 928 (1990)). To succeed on a claim "that delay in medical treatment rose to a constitutional violation," an inmate "must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment." *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1188. *See also Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208

(1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); *Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir.) *cert. denied*, 488 U.S. 863 (1988).

1. *Back, neck and shoulder pain*

It appears that plaintiff's true medical care concern is in connection with the treatment he did not receive for his mental illness. However, to the extent that plaintiff may be attempting to assert a claim against defendants for deliberate indifference to his back, neck and shoulder pain, same is due to be dismissed. In his amended complaint, plaintiff indicates that he suffered from back neck and shoulder pain, but does not describe the condition with any particularity, nor does he assert medical treatment was denied or delayed for that condition. As such, plaintiff has neither shown that his back, neck and shoulder pain constituted an objectively serious medical condition, nor has he shown that any defendant was deliberately indifferent to same. Accordingly, this claim is due to be dismissed for failure to state a claim upon which relief may be granted.

2. *Mental illness*

Plaintiff alleges that he did not receive his psychotropic medication or medical attention on several occasions, and that receipt of his medication was delayed for close to two weeks on at least on occasion. He wrote medical requests and grievances concerning same, but was informed that he would have to wait until the physician visited the jail. Unfortunately, plaintiff does not reveal any particular diagnosis of mental illness, nor does he identify the psychotropic medication he alleges he did not receive. However, because plaintiff contends that he had been prescribed said medication, and that the lack of same caused him severe mental anguish, the court finds that plaintiff has shown that he was suffering from an objectively serious medical condition for 1915A screening purposes.

When plaintiff wrote medical requests and grievances about these problems, he was told by unknown person(s) that he would have to wait for the doctor to arrive. He also appealed his grievances "through the chain of [command] all the way up to the Sheriff of [Pickens County,]" but only received a "negative response" from the sheriff, who "stated that the rules that are in place are not going to change." (Document #5, at 2).

Plaintiff does not name as defendants any jail or medical personnel who denied him medication, delayed his medical treatment, or informed him that he would have to wait for a doctor. Instead, plaintiff contends that Sheriff Abston was aware of and responsible for failing to remedy the inadequate medical care plaintiff received, by failing to employ full time medical staff, and presumably having a physician visit the jail more than once per week. Plaintiff also declares that Jail Supervisor Easter is liable because she knew that the medical department was inadequate and insufficient, and since plaintiff contends that he filed grievances up the chain of command, it is assumed, for 1915A screening purposes only, that defendant Easter was aware of, but refused to assist plaintiff with his medical care. While the court does not agree that defendants Abston and Easter showed deliberate indifference by failing to assure that inmates had full time medical personnel at their disposal, he has adequately alleged that defendants Abston and Easter were made aware of the problems plaintiff encountered with the available medical staff, were in a position to something about it, but refused to 'change the rules' in order to remedy same.

Therefore, plaintiff has stated an Eighth Amendment inadequate medical care claim against defendants Abston and Easter, with the underlying factual basis for same being denial and delay of medical attention for his mental illness. Said claim shall be addressed in further proceedings consistent herewith.

## II. Conspiracy

Plaintiff alleges that he has been the subject of a conspiracy. However, he has failed to set forth any facts to support his allegations. Allegations of conspiracy must be specific and based upon facts rather than conclusions. *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). "A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." *Id.* at 557. Because plaintiff has failed to allege any facts to support his conspiracy claims against defendants Abston, Easter, Wilkins and Bryant, said claims are due to be dismissed for failure to state a claim upon which relief may be granted. See *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984).

## III. Threats

It is well established that verbal abuse or harassment does not state a constitutional violation. *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979). Mere words, including verbal threats and harassment, are simply not actionable as violations of the Constitution. *Jones v. Superintendent*, 370 F. Supp. 488, 491 (W.D. Va. 1974) (*citing Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973)). *See also Stacey v. Ford*, 554 F. Supp. 8 (N.D. Ga. 1982). Furthermore, where threats of violence do not result in physical contact, a claim based upon such threats is due to be dismissed in a §1983 action even where such threats are without apparent justification. *Simms v. Reiner*, 419 F. Supp. 468, 474 (N.D. Ill. 1976); *accord Bolden v. Mandel*, 385 F. Supp. 761, 764 (D. Md. 1974). Under these principles, plaintiff's allegations of verbal threats made by defendants Wilkins and Bryant are insufficient to state a constitutional claim and are therefore due to be dismissed.

## IV. Access to Court

Plaintiff contends that inmates at Pickens County Jail had no access to law books or legal material. Legal standards pertaining to an inmate's denial of access to court claims are rooted in opinions contained in cases such as *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) and *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). *Bass v. Singletary*, 143 F.3d 1442 (11th Cir. 1998). "A violation of the right of access to courts requires that a prisoner establish that he has been deprived of 'meaningful access to courts.'" *Gaines v. Hetrick,* — F.Supp.—, 2001 WL 102341, *3 (S.D. Ala. 2001), (*citing Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996) (*quoting Bounds*[, 430 U.S. at 823])).

To show this deprivation,

> [A] prisoner must establish that he has suffered an actual injury. . . . If a prisoner is unable to establish an actual injury, the prisoner lacks standing to bring a claims for the denial of access to the courts. . . . Moreover, a prisoner's claims in the underlying action must be demonstrated to be a non-frivolous claim and one that is related to the prisoner's direct appeal of his conviction, to his habeas petition, or to his civil rights action vindicating a basic constitutional right. . . .

*Id.* (*citing Lewis v. Casey*, 518 U.S. at 349-51, and 353-55).

The Eleventh Circuit has adopted the above standard, explaining:

> With respect to access-to-court claims, *Lewis* clarifies that a plaintiff first must show actual injury before seeking relief under *Bounds*. *See Bass v. Singletary*, 143 F.3d 1442, 1444 (11th Cir.1998). This essential standing requirement means that prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. *See id.* at 1445. To prevail, a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials. *See id.* at 1446. Therefore, in an access-to-courts claim, "a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the denial is systemic." *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir.1996) (per curiam). Rather, a plaintiff must demonstrate that the lack of a law library or inadequate access to counsel hindered

15

his "efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights." *Id.*

*Wilson v. Blankenship*, 163 F. 3d 1284, 1290-91 (11th Cir. 1998).

This court has carefully applied the principles of *Lewis* and its progeny to the case at hand and has determined that plaintiff lacks standing to bring a constitutional access to court claim because he has not alleged that the systemic lack of legal materials available to him at Pickens County Jail hindered his ability to pursue a non-frivolous, post-conviction or civil rights action. Even if it is assumed that plaintiff is referring to the civil rights case discussed in this memorandum of opinion, he cannot satisfy the actual injury requirement because the lack of a law library has not impeded his ability to proceed. Therefore, plaintiff's access to court claims against defendants Abston and Easter are due to be dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the reasons stated above, the following claims are due to be DISMISSED pursuant to 28 U.S.C. §1915A(b)(1):

(1) Eighth Amendment claims against defendant Wilkins regarding the conditions in plaintiff's segregation cell,

(2) Eighth Amendment claims against defendants Abston and Easter regarding food quality and service at Pickens County Jail,

(3) Access to court claims against defendants Abston and Easter,

(4) Conspiracy claims against all defendants, and

(5) Verbal abuse and harassment claims (threats) against defendants Wilkins and Bryant.

Moreover, plaintiff's requests for injunctive relief are due to be rendered MOOT.

Finally, an Order for Special Report is due to be entered DIRECTING defendants:

(1) Abston, Easter, Wilkins and Bryant to respond to plaintiff's Eighth Amendment claims regarding the conditions of his confinement, and

(2) Abston and Easter to respond to plaintiff's Eighth Amendment claims regarding denial and delay of medical attention for his mental illness.

An appropriate Order shall be entered.

DONE this 15th day of September, 2003.

_____
Chief United States District Judge
U. W. Clemon